# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JUSTIN L. TRIPP,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CLARK COUNTY, et al.,<br><br>　　　　　Defendants. | Case No. 2:17-cv-1964-JCM-BNW<br><br>**ORDER** |

Presently before the Court are eleven motions (ECF Nos. 44, 53, 58, 67, 69, 70, 75, 76, 82, 91, 94), which the Court will address following a short recitation of the background of this case.

**I.　　Background**

Plaintiff is a pro se prisoner in the custody of the Federal Bureau of Prisons. This case arises from Plaintiff's allegations that: in March of 2016, he was arrested by Officers Torres and Rose. While being arrested, the officers beat him with their fists and metal batons. Plaintiff lost consciousness twice and suffered several injuries, including a facial contusion, dozens of superficial injuries, a dislocated shoulder, and broken arm. After the beating ended, officers handcuffed Plaintiff behind his back, which caused extreme pain. He was then taken to a hospital to treat his injuries where, among other things, he was given a sling for his broken arm. After this, he was taken to the Clark County Detention Center (CCDC) and handcuffed to a bench for approximately 24 hours. During this time, he could not stand up, lie down, use the restroom, get water, or feed himself and was in extreme pain. A few days later, Officer Esparza at CCDC took his sling away from him even though hospital staff told Plaintiff he was to wear it for several weeks.

As a result of these alleged events, Plaintiff filed a complaint against numerous defendants and an *in forma pauperis* application. Before screening Plaintiff's complaint, the Court sent Plaintiff forms and instructions for filing a Section 1983 complaint and gave him 30 days to file an amended complaint. (EC No. 8.) Plaintiff filed an amended complaint on January 7, 2019. (ECF No. 14.) The Court reviewed the First Amended Complaint and determined that it stated five plausible claims: (1) Fourth Amendment excessive force against defendants Torres and Rose; (2) Fourteenth Amendment inadequate medical care against defendants Rose, Torres, and John Doe #1; (3) Fourteenth Amendment conditions of confinement against defendant John Doe #1; (4) Fourteenth Amendment inadequate medical care against defendants NaphCare, Inc., Dr. Duran, Eric Lopez, nurse Rachel, and John Does #2, 3, 4, 5, and 6; and (5) Fourteenth Amendment inadequate medical care against defendant Esparza. (ECF No. 18 (Screening Order).) The Court also dismissed defendants Clark County, Las Vegas Metropolitan Police Department (LVMPD), Andrea Beckman, and Dr. Johnson without prejudice. (*Id.*)

**II.   Plaintiff's Motions to Amend First Amended Complaint and to Strike Defendants' Response to This Motion (ECF Nos. 44 and 58)**

**A.      The Parties' Arguments**

Plaintiff filed a motion to amend on March 18, 2019. (ECF No. 44.) Defendants responded on April 1, 2019. (ECF No. 47.) Plaintiff replied on April 15, 2019 and moved the Court to strike Defendants' response. (ECF Nos. 58, 59). To this motion to strike, Defendants responded (ECF No. 66) but Plaintiff did not reply.

In Plaintiff's proposed Second Amended Complaint, he attempts to add additional factual allegations to make out *Monell* claims. That is, he attempts to make out claims that LVMPD, CCDC,[1] and Clark County have customs or policies of "keeping detainees in severe pain,"

---

[1] As this Court previously noted, under Nevada law and federal case law, CCDC is not a separate legal entity distinct from Clark County and cannot be sued. "CCDC is a department of Clark County and not an independent legal entity. NRS 41.0305. Therefore, it cannot be sued. *Wayment v. Holmes*, 912 P.2d 816, 819–20 (Nev. 1996); *Wright v. City of Las Vegas, Nev.*, 395 F. Supp. 2d 789, 794 (S.D. Iowa 2005) ("In Nevada, political subdivisions may be sued; departments of political subdivisions may not." (citing NRS 41.031(1), (2))." (ECF No. 30 at 2.)

handcuffing inmates to a bench for extended periods, and disallowing inmates to have any medical devices while in the general population of the jail.

Defendants oppose Plaintiff's motion to amend, arguing that amendment would be futile. This is so, according to Defendants, because Plaintiff fails to allege any facts supporting his theory that LVMPD, CCDC, or Clark County have these alleged customs or policies. Defendants argue that Plaintiff's assertions are conclusory and only based on his personal experiences "from an isolated incident."

In Plaintiff's reply, he first moves the Court to strike Defendants' response "because the Defendant that is [responding] against the *Monell* claims isn't a party to them."[2] Plaintiff continues by arguing that "this defendant has no interest in this *Monell* claim . . . ." It appears to the Court that Plaintiff may be attempting to make a standing argument. However, the Court denies Plaintiff's motion to strike Defendants' response (ECF No. 58) because he provides no authority to support this argument. LR 7-2 ("The failure of a moving party to file points and authorities in support of the motion constitutes a consent to the denial of the motion."). In the future, Plaintiff is advised that he must support his arguments with relevant legal authority (for example, statutes or case law).

Plaintiff continues in his reply by addressing Defendants' argument that he has not offered enough factual allegations in his proposed Second Amended Complaint to state *Monell* claims. He starts, by way of background, explaining why his new allegations were not included in his original complaint. He describes, in detail, the legal forms that inmates are given to fill out when they are pursuing a claim, including the limited number of lines and pages inmates are allowed to use for each section and what each section tells the inmate to write. Plaintiff writes that he "believes that the forms and instructions are designed to streamline lawsuits and to prevent overly writing claims . . . ." However, he argues that the forms are vague and fail to give some inmates enough space to make out their claims. He argues further that some of the instructions,

---

[2] Plaintiff appears to be confused about which defendants are presently in the case and which were previously dismissed. (*See* ECF No. 59 at 1.) On January 16, 2019, Clark County and LVMPD (among others) were dismissed from this case without prejudice. (*See* ECF No. 18.)

specifically those that tell the inmates "not to cite legal authority or to cite case law" in certain sections can set up a "trap" for legally unsophisticated inmates. He notes that this happened to him, stating that he only referenced "LVMPD sett[ling] a[nother] suit for this exact same civil rights violation" without further detail in his proposed Second Amended Complaint because "the instructions [on the form] said not to cite legal authority or to cite case law." He also states that he did not originally plead *Monell* claims because he did not have access to a law library at the time.

Plaintiff then addresses the substance of Defendants' claim that he has not plead enough facts in his proposed Second Amended Complaint to assert *Monell* claims. In response to Defendants' assertion that Plaintiff "does not identify the policy" at issue, Plaintiff argues, "Plaintiff need not identify the precise policy or custom at issue, which would be difficult for an inmate to do without detailed records of LVMPD policies, customs or practice[s] . . . ." In response to Defendants' assertion that Plaintiff's allegations are only based on "his personal experience from an isolated incident[,]" Plaintiff disagrees.

Regarding his allegation in Count II that "LVMPD must have a policy then for keeping detainees in severe pain," Plaintiff alleges that several officers were all "a party" to handcuffing him behind his back while his shoulder was dislocated.

Regarding his allegation in Count III that "CCDC/Clark County/LVMPD has a custom, policy and a known history" of handcuffing inmates to a specific bench for extended periods, Plaintiff alleges that while he was handcuffed to the bench, at least four other people were all handcuffed to the same bench. He also cites *Cooley v. Marshal*, a case in which an inmate at CCDC sued (and won) over being handcuffed to a bench for an extended period. 2015 WL 4622589, at *3 (D. Nev. July 31, 2015), *aff'd in part, rev'd in part and remanded sub nom. Cooley v. Meads*, 728 F. App'x 773 (9th Cir. 2018) (reversed only on district court's refusal to give punitive damages instruction to jury). Plaintiff notes that in *Cooley*, Judge Du specifically noted that "the court is concerned about the constitutionality of the Detention Center's practice of restraining detainees to a bench as a solution to the shortage of isolation cells," but did not address the constitutionality of this policy as plaintiff "ha[d] not asserted a claim under *Monell*."

*Id.* at *3 n. 3. Plaintiff writes that he wants a *Monell* claim for this practice to be before the Court now.

Turning to Plaintiff's claim that LVMPD, CCDC, and Clark County have a policy of disallowing inmates to have any medical devices in the general population, Plaintiff argues that this claim is not based on solely on his own experience. He writes that it is also based on two other facts: (1) in his twenty months at CCDC, he never saw another inmate with a medical device and (2) Officer Cesar Esparza told him that CCDC does not allow medical devices outside of the medical unit.

### B. Legal Standard

Generally, a party may amend its pleading once "as a matter of course" within twenty-one days of serving it, or within twenty-one days after service of a responsive pleading or motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id*. "The court considers five factors [under Rule 15] in assessing the propriety of leave to amend—bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011).

Here, Defendants challenge Plaintiff's motion to amend on futility grounds only, arguing that Plaintiff's *Monell* claims are futile. A proposed amendment is futile if it could not withstand a Rule 12(b)(6) motion for failure to state a claim. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). In order to establish a *Monell* claim (i.e. liability for governmental entities under 42 U.S.C. § 1983), a plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). Here, Defendant argues that Plaintiff failed to plead factual allegations in support of the second element – that the municipality had a policy. (ECF No. 47 at 3 ("Plaintiff fails to state a cognizable *Monell* claim against LVMPD because his claim has no factual content

from which the Court may draw a reasonable inference that LVMPD is liable for an unconstitutional policy.").)

"Plaintiffs need not meet any heightened pleading standard to assert a § 1983 claim." *J.M. by & Through Rodriguez v. Cty. of Stanislaus*, 2018 WL 5879725, at *4 (E.D. Cal. Nov. 7, 2018). And although the Court must presume all factual allegations in Plaintiff's complaint are true, the Court does not "have to accept every allegation in the complaint as true in considering its sufficiency; rather, . . . [we] will examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992). To the extent that conclusory allegations do not follow from the facts alleged, the Court will reject these conclusions and find that the Plaintiff failed to state a claim. *Id.*

**C.     Analysis**

As explained in more detail below, the Court finds that Plaintiff failed to include sufficient facts in his proposed Second Amended Complaint to make out *Monell* claims. However, based on Plaintiff's reply brief, the Court believes that Plaintiff may be able to plead sufficient facts to make out *Monell* claims. Accordingly, the Court will deny Plaintiff's Motion to Amend (ECF No. 44) without prejudice.

In Count II of Plaintiff's proposed Second Amended Complaint, Plaintiff alleges that after officers beat him, dislocated his shoulder, and broke his arm, several officers "kept the plaintiff handcuffed behind his back." (ECF No. 44-1 at 8.) He goes on to allege that "[j]unior officers did the cuffing, supervising officers allowed it, and LVMPD must have a policy then for keeping detainees in severe pain even though he is completely surrounded and he could be handcuffed in front, or shackled." (*Id*.) Although Plaintiff provides additional factual allegations about his encounter with officers, he does not provide any additional factual allegations regarding any alleged policy. The Court gathers from Plaintiff's reply brief that he believes LVMPD has an official policy or custom of keeping detainees in pain based on his experience with several officers allegedly being complicit in this conduct toward him. (ECF No. 59 at 4-5.) However, Plaintiff's allegations in his reply brief cannot be "read into" his proposed complaint. And even if they could, they do not provide sufficient factual allegations to support the conclusion that

LVMPD has a policy or custom of keeping detainees in severe pain. Accordingly, the Court will deny Plaintiff's motion to amend Count II.

In Count III of Plaintiff's proposed Second Amended Complaint, Plaintiff alleges that "CCDC/Clark County/LVMPD has a custom, policy, and a known history of using this bench even though it is below the dignity of a man, and further LVMPD sett[l]ed suit for this exact same civil rights violation . . . ." (ECF No. 44-1 at 9.) Plaintiff also alleges that "CCDC/LVMPD has a policy of using this bench as a punishment//torture device, and has in the past settled litigation dealing with this very same issue." (*Id.* at 5.) Plaintiff does not include any additional facts in his proposed complaint about this alleged policy or facts to support the conclusion that such a policy exists. However, in his reply in support of his motion to amend, Plaintiff alleges that while he was handcuffed to the bench, at least four other people were all handcuffed to the same bench. He also cites *Cooley v. Marshal*, a case in which an inmate at CCDC sued (and won) over being handcuffed to a bench for at least 15 hours. 2015 WL 4622589, at *3-4 (D. Nev. July 31, 2015), *aff'd in part, rev'd in part and remanded sub nom. Cooley v. Meads*, 728 F. App'x 773 (9th Cir. 2018) (reversed only on district court's refusal to give punitive damages instruction to jury). Plaintiff notes that in *Cooley*, Judge Du specifically noted that "the court is concerned about the constitutionality of the Detention Center's practice of restraining detainees to a bench as a solution to the shortage of isolation cells," but did not address the constitutionality of this policy as plaintiff "ha[d] not asserted a claim under *Monell*." *Id.* at *3 n. 3. Plaintiff writes that he is attempting to advance a *Monell* claim over this same policy. (ECF No. 59 at 6.)

The Court finds that in Plaintiff's proposed Second Amended Complaint, he has not alleged sufficient facts to support the conclusion that Clark County or LVMPD has a policy of handcuffing detainees to a bench for extended periods. Again, Plaintiff's allegations in his reply brief cannot be "read into" his proposed complaint, but based on these allegations, the Court does not believe that all future attempts at amendment would be futile. Accordingly, the Court will deny Plaintiff's motion to amend Count III.

In Count V of Plaintiff's proposed Second Amended Complaint, Plaintiff alleges that "CCDC/LVMPD and Clark [C]ounty have a policy of enforcing no medical devices in General

Population . . . ." (ECF No. 44-1 at 11.) Plaintiff provides no other factual allegations in his proposed complaint to support his allegation that such a policy existed. However, in his reply brief, he alleges new facts to support his contention that such a policy exists: (1) in his twenty months at CCDC, he never saw another inmate with a medical device and (2) Officer Cesar Esparza told him that CCDC does not allow medical devices outside of the medical unit. Based on the foregoing, the Court finds that in Plaintiff's proposed Second Amended Complaint, he has not alleged sufficient facts to support the conclusion that such a policy existed. Plaintiff's allegations in his reply brief cannot be "read into" his proposed complaint, but based on these allegations, the Court does not believe that all future attempts at amendment would necessarily be futile. Accordingly, the Court will deny Plaintiff's motion to amend Count V.

If Plaintiff chooses to attempt to amend its complaint again, it must file another motion to amend and attached a proposed Second Amended Complaint. Plaintiff is advised that the proposed Second Amended Complaint must contain all of Plaintiff's allegations and claims; the Court cannot refer to prior complaints, motions, briefs, or any other filings to make Plaintiff's proposed Second Amended Complaint complete. In other words, the proposed Second Amended Complaint must be complete in and of itself.

### III. Plaintiff's Motions to Name New Defendants and Serve Them (ECF Nos. 67, 75, 76, and 82)

Plaintiff filed a motion to serve unserved defendants on April 30, 2019. (ECF No. 67.) Defendants did not respond to this motion.

The Court previously directed the Clerk of Court to issue summons to Dr. Duran and to deliver the same to the U.S. Marshal Service ("USM") for service. (*See* ECF Nos. 18, 19.) Plaintiff properly submitted the USM-285 forms for defendant Dr. Duran; however, the USM was unable to complete service for this defendant. (*See* ECF No. 22.) In ECF No. 67, Plaintiff provides what he believes are valid addresses for Dr. Duran and renews his request that USM serve Dr. Duran.

In ECF Nos. 75 and 76, Plaintiff provides the names of the five sergeants who worked in the booking area of CCDC while Plaintiff was allegedly handcuffed to a bench for approximately

24 hours. He asks the Court to substitute John Does 1-3 with the names of these five sergeants (Sgt. Robert Burleson, P#8115; Sgt. Neldon Barrowes P#5906; Sgt. Linda Buchanan P#9904; Sgt. Kevin Kegley P#8836; and Sgt. Jeanette Dillon P#8351) and have the USM serve them.

The Court will grant these three motions (ECF Nos. 67, 75, and 76) as unopposed. *See* LR 7-2(d) ("The failure of an opposing party to file points and authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees, constitutes a consent to the granting of the motion.").[3] The Court will order the Clerk of Court to send Plaintiff blank summonses and USM-285 forms, along with a copy of this order. Plaintiff must fill out these forms and file them with the Court by January 6, 2020. Plaintiff is instructed that, for each sergeant he wishes to serve, he must include the individual's "P#," first name, and last name on the summonses and USM-285 form. (*See* ECF No. 38 at 2 (indicating certain individuals could not be served without "P#s" or first names).) Upon receipt of the proposed summonses and completed USM-285 forms from Plaintiff, the Clerk of Court must issue the summonses and deliver the summonses, the USM-285 forms, a copy of the First Amended Complaint, and a copy of this order to the U.S. Marshal for service.

Finally, Plaintiff filed a similar motion to substitute new parties on July 26, 2019. (ECF No. 82.) Defendants responded on August 8, 2019. (ECF No. 85.) Plaintiff did not reply.

In Plaintiff's motion, he seeks to substitute two Doe defendants for defendants he has now identified. Specifically, he previously insufficiently identified "Nurse Pat" as a defendant, but now understands Nurse Pat's full name to be Patricia Oliver. Similarly, he previously insufficiently identified "Nurse G" and now understands Nurse G's full name to be Dionna Greer. Plaintiff requests that these defendants be substituted for Doe defendants and that the USM serve them. Plaintiff also moves the Court to order NaphCare to identify everyone who signed any medical document at CCDC for Plaintiff.

---

[3] The Court also previously indicated to Plaintiff that he may attempt service again on Dr. Duran and that he could move the Court to substitute the true names of the Doe defendants if the identities of these individuals came to light during discovery. (ECF No. 38 at 4-5.) This appears to have occurred.

Defendants respond that they have no objection to Plaintiff substituting Doe defendants for these two individuals, but state that these individuals no longer work at NaphCare and Defendants cannot accept service for them. Defendant also opposes Plaintiff's request to force NaphCare to identify all persons who signed any medical document for Plaintiff while he was at CCDC. Defendants represent that Plaintiff has not served them with any discovery requesting these identities.

Regarding Plaintiff's request to substitute Patricia Oliver and Dionna Greer for Doe defendants, Plaintiff has not indicated that he has a valid address at which either individual can be served. Defendants indicate that neither continues to work at NaphCare and that Defendants cannot accept service for either. Accordingly, the Court will deny Plaintiff's request to substitute these individuals for Doe defendants and have the USM serve them without prejudice. If Plaintiff discovers valid addresses for either or both individuals in the future, he may move the court again to substitute them for Doe defendants and have the USM serve them.

Regarding Plaintiff's request that Defendants identify every person who signed a medical document at CCDC for Plaintiff, there is no evidence before the Court that Plaintiff properly requested this information through discovery. It also appears that Plaintiff did not meet and confer with Defendants regarding his request for this information. As such, the Court will deny Plaintiff's request and, therefore, ECF No. 82 in its entirety. Plaintiff is advised to review the Federal Rules of Civil Procedure and Local Rules regarding the proper ways in which parties can obtain discovery, as well as Local Rule IA 1-3(f)(1) regarding meet and confers.

**IV.    Plaintiff's Motion for Appointment of Counsel (ECF No. 53)**

Plaintiff filed a motion for appointment of counsel on April 8, 2019. (ECF No. 53.) Certain defendants responded on April 11, 2019 (ECF No. 56), while other defendants moved to join this response the same day (ECF No. 57). Plaintiff replied on April 25, 2019. (ECF No. 65.) Plaintiff then filed a notice reaffirming his request for appointment of counsel. (ECF No. 100.) Certain defendants treated this filing as a third motion for appointment of counsel and responded on October 14, 2019 (ECF No. 103), while other defendants joined this filing on October 21, 2019. (ECF No. 105.) Plaintiff replied on October 24, 2019. (ECF No. 107.)

Plaintiff requests a court-appointed attorney for several reasons. He asserts that he cannot afford counsel; the issues in this case are complex; defendants are far away, which makes discovery and communication difficult; there are "medical components" requiring "technical knowledge" that Plaintiff does not have; there are many defendants in the case and lots of documents plaintiff is responsible for providing; Plaintiff has limited knowledge of the law; Plaintiff has been unsuccessful in retaining his own counsel; the case is ripe for settlement; Plaintiff has been unsuccessful in obtaining some discovery from defendants; and the case involves a "serious medical injury."

Defendants oppose Plaintiff's motion and argue that he has not presented any extraordinary circumstances that would make appointment of counsel appropriate. Further, Defendants note that this Court had already denied Plaintiff's previous motion for appointment of counsel and that the circumstances have not changed since this Court entered that order.

In reply, Plaintiff argues that there have been some changes since the Court first denied his motion for appointment of counsel. Importantly, Plaintiff notes that he is having surgery on his right arm shortly (related to the injuries that caused this litigation), is right-handed, and afterwards, he will be unable to write or type to continue with this litigation for several months. This is so, in part, because he will need to wear an arm immobilizer for several months after surgery.

Civil litigants do not have a Sixth Amendment right to appointed counsel. *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981). However, in very limited circumstances, federal courts are empowered to request an attorney to represent an indigent civil litigant. For example, courts have discretion, under 28 U.S.C. § 1915(e)(1), to "request" that an attorney represent indigent civil litigants upon a showing of "exceptional circumstances." *Agyeman v. Corrections Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004). The circumstances in which a court will make such a request, however, are exceedingly rare and require a finding of extraordinary circumstances. *United States v. 30.64 Acres of Land*, 795 F.2d 796, 799-800 (9th Cir. 1986); *Wilborn v. Escalderon,* 789 F.2d 1328, 1331 (9th Cir. 1986).

To determine whether the "exceptional circumstances" necessary for appointment of counsel are present, the Court evaluates (1) the likelihood of plaintiff's success on the merits and (2) the plaintiff's ability to articulate his claim pro se "in light of the complexity of the legal issues involved." *Agyeman*, 390 F.3d at 1103 (quoting *Wilborn*, 789 F.2d at 1331). Neither of these factors is dispositive and both must be viewed together. *Wilborn*, 789 F.2d at 1331. It is within the Court's discretion whether to request that an attorney represent an indigent civil litigant under 28 U.S.C. § 1915(e)(1). *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).

The Court has carefully reviewed Plaintiff's allegations and request for appointment of counsel. Regarding Plaintiff's likelihood of success on the merits, the Court notes that Plaintiff has asserted five plausible claims. He has also attached some medical documentation to filings that provides some support for these claims. Accordingly, he has some likelihood of success on the merits. Regarding Plaintiff's ability to articulate his claims, he alleges that he will undergo surgery soon on his right arm, that he is right-handed, and that after surgery, he will have to wear an arm immobilizer for several months. As a result, Plaintiff will not be able to write or type to continue this litigation for months. Considering these facts, the Court finds that this case presents a unique set of circumstances where the very allegations at the heart of Plaintiff's complaint, his arm condition, will prevent him from pursuing his case. Therefore, the Court, in its discretion, finds that Plaintiff demonstrates the exceptional circumstances required for the appointment of an attorney and will grant his motion (ECF No. 53).

The Court will refer this case to the Court's Pro Bono Pilot Program to attempt to find an attorney to accept Plaintiff's case. Plaintiff should be aware that the federal court has no authority to require attorneys to represent indigent litigants in civil cases under 28 U.S.C. § 1915(d). *Mallard v. U.S. Dist. Court for Southern Dist. of Iowa*, 490 U.S. 296, 298 (1989). Rather, when a court "appoints" an attorney, it can only do so if the attorney voluntarily accepts the assignment. *Id.* If counsel is found for Plaintiff, the Court will issue an order appointing counsel and counsel will contact Plaintiff. Plaintiff is reminded that until counsel is provided, he is still responsible for complying with all deadlines in his case.

### V. Plaintiff's Motion to File Discovery Exhibits or, Alternatively, Motion for Settlement Conference (ECF No. 69)

Plaintiff filed a motion seeking to file discovery exhibits on the record or, alternatively, seeking a settlement conference on May 9, 2019. (ECF No. 69.) Defendants responded on May 23, 2019. (ECF No. 71.) Plaintiff did not file a reply.

First, the Court denies Plaintiff's request to file discovery exhibits on the record. Local Rule 26-8 provides that written discovery "must not be filed with the court" unless the Court orders otherwise. Plaintiff has not provided any reason why it would be necessary or appropriate to file discovery in the record in this case. Accordingly, the Court denies this request of Plaintiff's.

Second, the Court encourages parties to engage in settlement discussions and to attempt to settle cases early, if possible. Here, however, Defendants do not believe that a settlement conference would be productive or an efficient use of the Court's time at this stage in discovery. The Court will not force Defendants to engage in a settlement conference at this juncture and will deny Plaintiff's request for a settlement conference. Accordingly, ECF No. 69 will be denied in its entirety.

In the future, however, the parties may file a joint stipulation requesting a settlement conference if they agree that Magistrate Judge Weksler's participation in discussions would be helpful.

### VI. Defendants' Motion to Extend Time (ECF Nos. 70 and 91)

Defendants filed their first request to extend discovery by 90 days on May 21, 2019. (ECF No. 70.) Other defendants joined this motion on May 24, 2019 (ECF No. 72), and Plaintiff responded on June 3, 2019. (ECF No. 73.) Defendants replied on June 6, 2019. (ECF No. 74.) Plaintiff subsequently filed a motion to deny Defendants' motion to extend time on August 23, 2019. (ECF No. 91.) Defendants did not respond to this motion.

The Court carefully reviewed all of the parties' briefs. While Plaintiff opposes Defendants' proposed discovery extension, as Defendants point out, Plaintiff also concedes that he has not completed discovery yet. Defendants argue that they need additional time, too. Further,

given some of the decisions in this order and the fact that some of the extend-discovery deadlines that Defendants proposed have already lapsed, the Court believes that both parties will need additional time to conduct and complete discovery. Accordingly, the Court will grant Defendants' motion for an extension (ECF No. 70) starting from the date of this order.[4] The new dates are as follows: Discovery Deadline 5/30/2020; Motions to Amend Pleadings and Add Parties 3/1/2020; Expert Disclosures 3/31/2020; Rebuttal Expert Disclosures 4/30/2020; Dispositive Motions 6/29/2020; Pretrial Order 7/29/2020; and Interim Status Reports 3/31/2020.

For the same reasons that the Court grants Defendants' motion for an extension of time, it denies Plaintiff's motion to deny Defendants' motion (ECF No. 91).

### VII. Plaintiff's Motion Seeking Status of Pending Motions (ECF No. 94)

Plaintiff filed a motion on September 9, 2019 seeking to know the status of the motions pending before this Court. (ECF No. 94.) Defendants did not respond to this motion. In light of this order, which addresses all of the motions pending before the undersigned Magistrate Judge, Plaintiff's Motion Seeking Status of Pending Motions (ECF No. 94) is denied as moot.

### VIII. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Amend First Amended Complaint (ECF No. 44) is DENIED without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Response to Motion to Amend (ECF No. 58) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Appointment of Counsel (ECF No. 53) is GRANTED.

**IT IS FURTHER ORDERED** that this case is referred to the Pilot Pro Bono Program adopted in General Order 2017-07 for the purpose of identifying an attorney willing to be appointed as a pro bono attorney for Plaintiff. Plaintiff is reminded that he must comply with all

---

[4] At the time that Defendants filed their motion, they sought a 90-day extension of all discovery dates and had two months remaining before the discovery cut-off date (i.e. they indicated they needed five months to complete discovery). Accordingly, the court is granting the parties a little more than five months to complete discovery.

deadlines currently set in his case and there is no guarantee that counsel will be appointed. If counsel is found, an order appointing counsel will be issued by the Court and Plaintiff will be contacted by counsel.

**IT IS FURTHER ORDERED** that the Clerk of Court must forward this order to the Pro Bono Liaison.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Service on Unserved Defendants (ECF No. 67) is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Substitute John Doe #1 for True Identities; and Request an Order to Serve Newly Named Defendants (ECF No. 75) is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Substitute John Doe #1 for True Identities; and Request an Order to Serve Newly Named Defendants (ECF No. 76) is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Substitute Parties (ECF No. 82) is DENIED without prejudice.

**IT IS FURTHER ORDERED** that the Clerk of Court must send Plaintiff six blank summonses and six blank USM-285 forms, along with a copy of this order.

**IT IS FURTHER ORDERED** that Plaintiff must fill out these forms and file them with the Court **by January 3, 2020**.

**IT IS FURTHER ORDERED** that upon receipt of the proposed summonses and completed USM-285 forms from Plaintiff, the Clerk of Court must issue the summonses and deliver the summonses, the USM-285 forms, a copy of the First Amended Complaint, and a copy of this order to the U.S. Marshal for service.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to File Discovery Exhibits, or Alternatively, Motion for Settlement Conference (ECF No. 69) is DENIED.

**IT IS FURTHER ORDERED** that Defendants' motion for an extension (ECF No. 70) is GRANTED. The discovery deadlines are as follows: Discovery Deadline 5/30/2020; Motions to Amend Pleadings and Add Parties 3/1/2020; Expert Disclosures 3/31/2020; Rebuttal Expert Disclosures 4/30/2020; Dispositive Motions 6/29/2020; Pretrial Order 7/29/2020; and Interim Status Reports 3/31/2020.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Deny Motion to Extend Time for Discovery (ECF No. 91) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion Seeking Status of Pending Motions (ECF No. 94) is DENIED.

DATED: December 2, 2019

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE