1

2

3

4               UNITED STATES DISTRICT COURT

5                    DISTRICT OF NEVADA

6                            * * *

7    JUSTIN L. TRIPP,                          Case No. 2:17-CV-1964 JCM (BNW)

8                           Plaintiff(s),                    ORDER

9         v.

10   CLARK COUNTY, et al.,

11                         Defendant(s).

12

13          Presently before the court is defendants Naphcare, Inc., Harry Duran, M.D., Eric Lopez,

14   P.A., Rachel Scheiblich, Kendra Meyer, and Raymond Mondora, D.O. (collectively, "defendants")

15   's motion for summary judgment.  (ECF No. 244).  Plaintiff Justin Tripp filed a response (ECF

16   No. 251), to which defendants replied (ECF No. 252).

17   **I.     Background**

18          There is no genuine dispute as to the following material facts.  Plaintiff was arrested by

19   LVMPD officers on March 21, 2016.  (ECF No. 244-2 at 10).  Following his arrest, he was

20   transported by ambulance to Spring Valley Hospital, where he was diagnosed with a dislocation

21   and fracture of his right shoulder.  (*Id.* at 11; ECF No. 244-4).  He was given treatment at the

22   hospital, placed in a shoulder immobilizer, discharged, and transported to Clark County Detention

23   Center ("CCDC").  (ECF Nos. 244-2 at 11–12; 244-4).  Plaintiff had a history of injuries to that

24   same shoulder.  (ECF No. 244-2 at 6–9).

25          Upon arrival at CCDC, he underwent an immediate medical assessment, and was seen

26   again the following day (March 22, 2016) for a second and third assessment.  (ECF No. 244-5 at

27   262, 255, 247).  He was given pain medication and placed in medical housing.  (*Id.* at 247).  The

28   next day (March 23, 2016), plaintiff was seen by Dr. Harry Duran.  (*Id.* at 246–47).  Dr. Duran

**James C. Mahan**
**U.S. District Judge**

1    examined plaintiff, ordered additional medication, continuation of the shoulder sling, as well as a

2    shoulder x-ray.  (*Id.*)  That x-ray was performed the same day, and, according to medical records,

3    showed nothing abnormal.  (*Id.* at 12).

4          Plaintiff was seen again the following day by nurse practitioner Dale Major after

5    complaining of rib pain.  (*Id.* at 245–46).  Major ordered additional x-rays on March 26, 2016,

6    which were completed on March 28, 2016.  (*Id.* at 11, 245).  The radiology reports for those x-

7    rays show the "physician" as Raymond Mondora, M.D., and indicated that they were "interpreted

8    by" Dean Yarbro, M.D.  (*Id.* at 11)  The radiology reports indicate that while there was evidence

9    of previous trauma to the shoulder, there was no current dislocation.  (*Id.*)

10         Following those x-rays, Dr. Duran saw plaintiff again on March 30, 2016.  (*Id.* at 244–45).

11   He noted some tenderness in the shoulder, but that there was good range of motion.  (*Id.*)   He

12   discharged plaintiff to general population, and plaintiff's medical records indicate that he was

13   instructed to perform range of motion exercises daily.  (*Id.*)

14         Plaintiff was then seen on April 1, 2016, by physician assistant Eric Lopez.  (*Id.* at 244).

15   In response to plaintiff's complaints, Lopez ordered additional medication and, according to the

16   records, recommended certain exercises.  (*Id.*)  Medication records from before and after this

17   appointment indicate that plaintiff received multiple administrations of pain medication each day.

18   (*Id.* at 14–238).

19         Following this appointment, plaintiff submitted several written medical requests

20   complaining of pain.  (*Id.* at 3–10).  Medical staff responded to each of these written requests

21   informing plaintiff that he had been seen and was receiving pain medications.  (*Id.*)

22         Plaintiff went on to attend two more appointments with Lopez on June 1, 2016, and June

23   15, 2016, respectively.  (*Id.* at 242–44).  Following each appointment, Lopez adjusted plaintiff's

24   medication.  (*Id.*)  During the June 1 appointment, plaintiff requested an MRI, to which Lopez

25   advised him that he would have to make a formal request for that treatment that would require

26   supervisor approval.  (*Id.* at 243).

27         Over the following six months, plaintiff continued to receive treatment from non-party

28   medical providers while imprisoned.  *See generally* (*Id.* at 239–242).  In December 2016, he

**James C. Mahan**
**U.S. District Judge**

- 2 -

1    underwent another x-ray, which indicated no substantive change from the previous x-ray.  (*Id.* at

2    239, 2).  The radiology report for the December x-ray also noted Dr. Mondora as the "physician"

3    and indicated it was interpreted by Dr. Yarbro.  (*Id*. at 2).

4         Plaintiff, filing *pro se*, later brought this suit against defendants, Clark County, LVMPD,

5    and several LVMPD officers alleging various civil rights violations.  (ECF No. 1).  After protracted

6    litigation, the court allowed plaintiff to file a second amended complaint, and that document

7    remains the currently operative pleading.  *See* (ECF No. 169).  Following dismissal of several

8    defendants (ECF Nos. 18; 193), and settlement with the defendants associated with LVMPD (ECF

9    No. 239), plaintiff has two classes of claims remaining: state law medical malpractice claims

10   against each of the individual defendants, and 42 U.S.C. § 1983 claims alleging deliberate

11   indifference to medical needs against all remaining defendants in both their individual and official

12   capacities.  Defendants have moved for summary judgment on all claims.  (ECF No. 244).

13   **II.    Legal Standard**

14        The Federal Rules of Civil Procedure allow summary judgment when the pleadings,

15   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

16   show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment

17   as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate

18   and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–

19   24 (1986).

20        For purposes of summary judgment, disputed factual issues should be construed in favor

21   of the non-moving party.  *Lujan v. Nat'l Wildlife Fed*., 497 U.S. 871, 888 (1990).  However, to be

22   entitled to a denial of summary judgment, the non-moving party must "set forth specific facts

23   showing that there is a genuine issue for trial."  *Id.*

24        In determining summary judgment, the court applies a burden-shifting analysis.  "When

25   the party moving for summary judgment would bear the burden of proof at trial, it must come

26   forward with evidence which would entitle it to a directed verdict if the evidence went

27   uncontroverted at trial."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc*., 213 F.3d 474, 480

28

**James C. Mahan**
**U.S. District Judge**

1   (9th Cir. 2000).  Moreover, "[i]n such a case, the moving party has the initial burden of establishing

2   the absence of a genuine issue of fact on each issue material to its case."  *Id.*

3          By contrast, when the non-moving party bears the burden of proving the claim or defense,

4   the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential

5   element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed

6   to make a showing sufficient to establish an element essential to that party's case on which that

7   party will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving

8   party fails to meet its initial burden, summary judgment must be denied and the court need not

9   consider the non-moving party's evidence.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–

10  60 (1970).

11         If the moving party satisfies its initial burden, the burden then shifts to the opposing party

12  to establish that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith

13  Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the

14  opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient

15  that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

16  versions of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626,

17  630 (9th Cir. 1987).

18         In other words, the nonmoving party cannot avoid summary judgment by relying solely on

19  conclusory allegations that are unsupported by factual data.  *See Taylor v. List*, 880 F.2d 1040,

20  1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the

21  pleadings and set forth specific facts by producing competent evidence that shows a genuine issue

22  for trial.  *See Celotex*, 477 U.S. at 324.

23         At summary judgment, a court's function is not to weigh the evidence and determine the

24  truth, but to determine whether a genuine dispute exists for trial.  *See Anderson v. Liberty Lobby*,

25  *Inc.*, 477 U.S. 242, 249 (1986).  The evidence of the nonmovant is "to be believed, and all

26  justifiable inferences are to be drawn in his favor."  *Id.* at 255.  But if the evidence of the

27  nonmoving party is merely colorable or is not significantly probative, summary judgment may be

28  granted.  *See id.* at 249–50.

**James C. Mahan**
**U.S. District Judge**

- 4 -

1    The Ninth Circuit has held that information contained in an inadmissible form may still be

2    considered for summary judgment if the information itself would be admissible at trial.  *Fraser v.*

3    *Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410,

4    418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to

5    produce evidence in a form that would be admissible at trial, as long as the party satisfies the

6    requirements of Federal Rules of Civil Procedure 56.")).

7    **III.    Discussion**

8        Defendants move for summary judgment on all claims against them.  In response, plaintiff

9    produces a four-page statement of disputed facts that does not once cite to the record of this case.

10   In fact, there is not a single record citation in the entirety of plaintiff's ten-page response to the

11   motion other than his identification of the second amended complaint as ECF No. 169.  *See* (ECF

12   No. 251 at 2).

13       It behooves litigants, particularly in a case with a record of this magnitude, to resist the

14   temptation to treat judges as if they were "pigs sniffing for truffles."  *See Downs v. Los Angeles*

15   *Unified Sch. Dist.,* 228 F.3d 1003, 1007 n. 1 (9th Cir. 2000) (citing *United States v. Dunkel,* 927

16   F.2d 955, 956 (7th Cir. 1991)).  Plaintiff fails to produce *any* evidence other than his own self-

17   serving conclusions, and the court will not scour the lengthy evidentiary record of this case to

18   substantiate his uncited conclusions.  For that reason, and because defendants have shown there is

19   no genuine dispute of material fact as to the remaining claims, the court GRANTS defendants'

20   motion on all claims.

21       A.  Claims against Dr. Duran

22       As an initial matter, the court dismisses the claims against Dr. Duran.  As noted in the

23   suggestion of death filed on August 18, 2022, Dr. Duran passed away during the pendency of this

24   . . .

25   . . .

26   . . .

27   . . .

28

**James C. Mahan**
**U.S. District Judge**

- 5 -

1    litigation before filing of the instant motion.  (ECF No. 243).  To date, no motion for substitution

2    has been filed naming an alternative party.

3        > If a party dies and the claim is not extinguished, the court may order
4        > substitution of the proper party. A motion for substitution may be
         > made by any party or by the decedent's successor or representative.
5        > If the motion is not made within 90 days after service of a statement
         > noting the death, the action by or against the decedent must be
6        > dismissed.

7    Fed. R. Civ. Pro. 25(a)(1).  Therefore, regardless of whether counsel may properly move for

8    summary judgment for the now-deceased Dr. Duran as they dispute, pursuant to Federal Rule of

9    Civil Procedure 25(a)(1), the claims against him must be dismissed.

10       B.  The State Law Malpractice Claims

11       Likewise, the court must grant summary judgment on the state law malpractice claims.

12   Plaintiff concedes in his opposition that he has failed to produce expert testimony supporting his

13   state law claim for medical malpractice.  (ECF No. 251 at 2).

14       A claim for medical malpractice is a state law claim.  *See Kinford v. Bannister,* 913 F.

15   Supp. 2d 1010, 1014 (D. Nev. 2012).  Nevada law provides that medical malpractice actions shall

16   be dismissed "if the action is filed without an affidavit, supporting the allegations contained in the

17   action, submitted by a medical expert who practices or has practiced in an area that is substantially

18   similar to the type of practice engaged in at the time of the alleged malpractice." Nev. Rev. Stat. §

19   41A.071.

20       Much has been made in this case as to whether that Nevada law is substantive (and thus

21   applicable in this case) or procedural (and thus not applicable).  *See* (ECF Nos. 168; 172; 213).

22   Magistrate Judge Weksler has consistently found that the requirement is procedural, and thus

23   inapplicable, and has made such a recommendation to this court over defendants' motion for

24   reconsideration.  (ECF Nos. 164; 213).  Defendants have objected to that conclusion, but the court

25   need not decide that objection.[1]  Even if the requirement is procedural as Judge Weksler has

26   determined, plaintiff's claims for medical malpractice still fail.

27   _____

28       [1] Further, defendants state that they are awaiting a ruling on their objection (ECF No. 172)
     to Magistrate Judge Weksler's ruling (ECF No. 164) that they file a last known address under seal
     for Dr. Dean Yarbro.  Magistrate Judge Weksler reconsidered her order and vacated it as to that

James C. Mahan
U.S. District Judge

1    Here, defendants provide expert testimony form Dr. James Van den Bogaerde, M.D., a

2    board-certified orthopaedic surgeon.  His testimony indicates that there was no breach of the

3    standard of care, which is required of all medical malpractice claims.  *See* (ECF No. 244-3);

4    *Fernandez v. Admirand*, 843 P.2d 354, 358 (Nev. 1992).  That plaintiff, in his layman's opinion,

5    "disputes" that defendants complied with the standard of care is of no import.  Plaintiff does not

6    provide any evidence controverting defendants' expert and establishing that there was, or even

7    could have been, a breach of the standard of care.  Because plaintiff relies solely on conclusory

8    allegations that are unsupported by factual data, summary judgment is appropriate.  *See Taylor*,

9    880 F.2d at 1045.

10    Even assuming that the statute is procedural, thus allowing the claims to survive, there is

11    no genuine dispute of material fact.  Evidence shows defendants did not breach the standard of

12    care.  Summary judgment is GRANTED as to the state law malpractice claims.

13    C.  Constitutional Claims Against the Other Individual Defendants

14    Plaintiff also brings claims against Lopez, Scheiblich, Meyer, and Mondora (collectively,

15    the "individual defendants") under the Fourteenth Amendment by way of 42 U.S.C. § 1983 for

16    deliberate indifference to medical needs.  Because he fails to adduce any affirmative evidence

17    displaying a genuine dispute of material fact, summary judgment is appropriate on each of these

18    claims.

19    Pretrial detainees may bring a deliberate indifference claim under the Due Process Clause

20    of the Fourteenth Amendment.  *Gordon v. County of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018).

21    To state a claim for deliberate indifference, a plaintiff must allege (1) the defendant made an

22    intentional decision with respect to the conditions under which plaintiff was confined; (2) those

23    conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not

24    take reasonable available measures to abate that risk, even though a reasonable official in the

25

26    ruling, thus mooting the objection on that ground on August 17, 2021.  (ECF No. 213).  Thus, it is
unclear to the court why this motion, filed on September 23, 2022, states that it awaits a ruling on

27    an objection that was mooted more than a year prior.  Nevertheless, to date, there has been no
proof of service filed as to Dr. Yarbro.  This order shall therefore constitute notice to the plaintiff
of intent to dismiss the action under Federal Rule of Civl Procedure 4(m) as to Dr. Yarbro in thirty

28    days unless compliant proof of service is filed with this court.

James C. Mahan
U.S. District Judge

1   circumstances would have appreciated the high degree of risk involved; and (4) by not taking such

2   measures, the defendant caused plaintiff's injuries. *Id.* at 1125.

3         A prison official acts with deliberate indifference only when the official "knows of and

4   disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1060

5   (9th Cir. 2004) (internal quotes and citations omitted). The official must "both be aware of facts

6   from which the inference could be drawn that a substantial risk of serious harm exists, and he must

7   also draw the inferences." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference

8   "may appear when prison officials deny, delay or intentionally interfere with medical treatment."

9   *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Further, the third element requires

10   the court to consider whether the defendant's conduct is "objectively unreasonable." *Id.* A

11   plaintiff must allege "something akin to reckless disregard." *Id.*

12            *1. Rachel Scheiblich*

13         Plaintiff claims that Scheiblich, known as "Rachel Rudd" at the time of the incidents,

14   improperly denied him medical care. The second amended complaint is vague as to the contours

15   of this allegation, but, from what the court can glean, plaintiff claims that Scheiblich was the

16   individual that denied his medical request forms.

17         Scheiblich's name does not appear on any of the medical request forms. It does not appear

18   in any of the treatment records. According to her declaration, Scheiblich did not even work for

19   Naphcare until October 2016, approximately six months after the relevant forms were submitted.

20   It is unclear what plaintiff refers to when he states

21               I deny that Nurse Rachel 'didn't sign any requests;' her name is

22               signed to them. That is how I discovered that she is involved. Her
                  name is at the bottom of medical requests, along with a dozen other

23               unknown names or scribbles so that inmates won't know who signed
                  them. It's a part of the game they play to cover up medical

24               deniability.

25   (ECF No. 251 at 6). While there are signatures at the bottom of the medical forms, there are none

26   resembling the name "Rachel Rudd," nor does her name, former or current, appear anywhere else

27   in plaintiff's treatment records. *See* (ECF No. 244-5). That, combined with Scheiblich's

28   declaration that she was not even employed by Naphcare on the relevant dates, *see* (ECF No. 244-

**James C. Mahan**
**U.S. District Judge**

7), shows there is no genuine dispute of material fact.  The court GRANTS summary judgment in favor of Scheiblich.

### 2. Kendra Meyer

Plaintiff also claims that Kendra Meyer, then "Kendra Schultz," displayed deliberate indifference to his medical care by denying him a requested MRI.  Meyer's declaration indicates that she had no authority to order an MRI.  (ECF No. 244-8).  However, even disregarding that testimony as an unsupported conclusory statement, plaintiff's expert provides evidence that an MRI was unnecessary in the first place, and therefore denial of an MRI was not a breach of the appropriate standard of care.  (ECF No. 244-3 at 6).  Thus, given that plaintiff has produced no expert evidence—or, indeed, any evidence—rebutting that assertion, summary judgment is appropriate.  The court grants summary judgment as to claims against Schultz.

### 3. Dr. Raymond Mondora

Plaintiff also claims that Dr. Mondora was deliberately indifferent.  While his allegations against Mondora are unclear, the primary claim seems to be that the interpretation of a December 2016 x-ray as showing an "old fracture" was a misdiagnosis and thus deliberate indifference.  (ECF No. 169 at 30).

Dr. Mondora was not the doctor who made this diagnosis.  While Dr. Mondora is the doctor who administered the x-rays, each of the radiology reports show that they were signed and interpreted by Dr. Dean Yarbro.  (ECF No. 244-4 at 2, 11–13).  Thus, Dr. Mondora could not have misinterpreted x-rays that he was never responsible for interpreting.

Regardless, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Even assuming that Dr. Mondora is the doctor that interpreted the x-rays—he was not—plaintiff fails to show any dispute of material fact as to the requisite reckless indifference required to prove his claim.  At most, he alleges that the interpreting doctor got the interpretation wrong.  "A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice[.]" *Id.* at 107.  Defendants' expert testifies that Dr. Mondora's ordering of the x-rays was consistent with the appropriate standard of care.  (ECF No. 244-3 at 7).  This court

1    finds no evidence controverting that representation.  Summary judgment is GRANTED in favor

2    of Dr. Mondora.

3              4.  *Eric Lopez*

4    Finally, plaintiff also brings a deliberate indifference claim against Eric Lopez, P.A., who

5    saw plaintiff three separate times from April–June 2016.  Plaintiff presents several purported

6    "disputes" as to Lopez's treatment, including that Lopez (1) never told him his shoulder was

7    broken; (2) treated him despite not having "any view of seeing [him] or how [he] could have good

8    [range of motion]"; and (3) was hostile and "never 'explained' anything."  (ECF No. 251 at 3–4).

9    Again, despite purporting to "dispute" these facts, plaintiff does not cite to a single piece of

10   evidence controverting them.

11   The evidence shows Lopez saw plaintiff three times: April 1, 2016; June 1, 2016; and June

12   15, 2016.  (ECF No. 244-5 at 242–44).  After each appointment, the medical records indicate that

13   Lopez ordered a change in medication and other treatment responsive to the specific complaints

14   plaintiff raised.  (*Id*.)  Lopez's treatment met the appropriate standard of care according to

15   defendants' expert.  (ECF No. 244-3).  Even if it failed to meet that standard, medical malpractice

16   alone is insufficient to sustain a constitutional violation.  *Estelle*, 429 U.S. at 106.  There is no

17   evidence that Lopez's conduct was objectively unreasonable such that a deliberate indifference

18   claim would lie.  Summary judgment is appropriate, and the court GRANTS defendants' motion

19   as to Lopez.

20         D.  Claims as to Naphcare

21   Finally, plaintiff also appears to bring his deliberate indifference claims as to Naphcare.

22   "A suit against a governmental official in his official capacity is equivalent to a suit against the

23   governmental entity itself."  *Larez v. Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991).  Therefore,

24   the court will analyze plaintiffs' official capacity claims against the individual defendants together

25   with plaintiff's claim against Naphcare.  *See, e.g.*, *Shafter v. City of Boulder*, 896 F. Supp. 2d 915,

26   936 n.10 (D. Nev. 2012).

27   The principal framework governing municipal liability in § 1983 actions against

28   municipalities was established in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  Under

**James C. Mahan**
**U.S. District Judge**

1    *Monell*, municipal liability must be based upon the enforcement of a municipal policy or custom,

2    not upon the mere employment of a constitutional tortfeasor.  *Id.* at 691.  Therefore, in order for

3    liability to attach, four conditions must be satisfied: "(1) that [the plaintiff] possessed a

4    constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this

5    policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the

6    policy is the 'moving force behind the constitutional violation.'"  *Van Ort v. Estate of Stanewich*,

7    92 F.3d 831, 835 (9th Cir. 1996).

8            "To prevent municipal liability . . . from collapsing into respondeat superior liability,"

9    federal courts must apply "rigorous standards of culpability and causation" in order to "ensure that

10   the municipality is not held liable solely for the actions of its employees."  *Board of Cnty. Comm.*

11   *of Bryan City v. Brown*, 520 U.S. 397, 405, 410 (1997).  Thus, a municipality will only be liable

12   when the "execution of a government's policy or custom . . . inflicts the injury . . . ."  *Monell*, 463

13   U.S. at 694.

14           In order to show a policy, the plaintiff must identify "a deliberate choice to follow a course

15   of action . . . made from among various alternatives by the official or officials responsible for

16   establishing final policy with respect to the subject matter in question."  *Fairley v. Luman*, 281

17   F.3d 913, 918 (9th Cir. 2002) (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992))

18   (internal quotation marks omitted).  "Proof of random acts or isolated events" does not fit within

19   *Monell*'s meaning of custom.  *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir.

20   1989), *overruled on other grounds*, *Bull v. City & Cnty. of San Francisco*, 595 F.3d 964 (9th Cir.

21   2010).  Moreover, plaintiff must allege a specific municipal policy in order to sustain his § 1983

22   claim.  *See, e.g., Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) ("[O]bviously, if one retreats

23   far enough from a constitutional violation some municipal 'policy' can be identified behind almost

24   any such harm [(unreasonable use of force)] inflicted by a municipal official").

25           Here, there is no evidence of any practice leading to the alleged violation.  Plaintiff does

26   not allege what the purported policy leading to deliberate indifference is, nor does he even allege

27   that there was some sort of de facto policy.  Plaintiff's opposition to summary judgment summarily

28   concludes "the NaphCare Defendants knew Plaintiff had a broken shoulder, knew Plaintiff was in

James C. Mahan
U.S. District Judge

pain for it, but that they failed to treat it, and that he incurred permanent damage due to medical indifference." (ECF No. 251 at 9). This statement, as with the remainder of the opposition, is unsupported by any citations to the record. The record is bereft of any evidence that a specific policy or custom was the moving force behind plaintiff's alleged injury. There is no evidence from which a jury could find a *Monell* violation, and the court therefore GRANTS defendants' motion as to this ground.

**IV.   Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion for summary judgment (ECF No. 244) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that the claims against Harry Duran, M.D. be, and the same hereby are, DISMISSED pursuant to Federal Rule of Civil Procedure 25(a)(1).

IT IS FURTHER ORDERED that plaintiff shall file proof of service compliant with Federal Rule of Civil Procedure 4 as to Dr. Dean Yarbro within thirty (30) days of the date of this order or the claims against him shall be dismissed.

The clerk is instructed to enter judgment consistent with this order in favor of Naphcare, Inc., Harry Duran, Eric Lopez, Rachel Scheiblich, Kendra Meyer, and Raymond Mondora.

DATED February 22, 2023.

_____
UNITED STATES DISTRICT JUDGE